IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MICHELLE HUME**,

               Plaintiff,

     v.

**GUARDIAN MANAGEMENT LLC,**
**UPTOWN TOWER APARTMENTS, and**
**LISA SIMONSON**,

               Defendants.

Case No. 3:21-cv-517-SI

**AMENDED OPINION AND ORDER**

Michelle Hume, Plaintiff *Pro Se*.

Christopher Drotzmann, DAVIS ROTHWELL EARLE & XOCHIHUA PC, 200 SW Market St., Suite 1800, Portland, OR 97201. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

     Plaintiff Michelle Hume, now proceeding *pro se* and representing herself although represented by appointed counsel at the time she defended Defendants' motion for summary judgment, brings this lawsuit against Defendants Guardian Management LLC, Uptown Tower Apartments (Uptown Tower), and Lisa Simonson for alleged violations of the Fair Housing Act (FHA), 42 U.S.C. § 3604(f). Plaintiff contends that Defendants discriminated against her because

PAGE 1 – AMENDED OPINION AND ORDER

of her disability by failing to provide her with an accessible parking space and failing to install signage at her assigned parking space at Uptown Tower. Defendants argue that they have already granted Plaintiff's reasonable requests for accommodation and that Plaintiff's additional requests are not reasonable. Before the Court is Defendants' motion for summary judgment. For the reasons explained below, the Court grants in part Defendants' motion.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

Plaintiff suffers from a medical condition that limits her mobility, requires Plaintiff to sometimes use a wheelchair, qualifies her for a disabled parking permit from the state of Oregon, and substantially limits Plaintiff's ability to walk long distances. ECF 39-1, ¶ 2. Plaintiff resides

at Uptown Tower. *Id.* Uptown Tower provides affordable housing for seniors over the age of 62 and for individuals with disabilities. ECF 44, ¶ 3.

Upon moving into Uptown Tower in 2014, Plaintiff asked if the building's residential garage had any available parking spaces. ECF 39-1, ¶ 4. Defendants informed Plaintiff that none were available and put Plaintiff on a waiting list. *Id.* The following year, Plaintiff submitted an informal written request for a parking space. *Id.* Plaintiff remained on the waiting list until February 2021, when Plaintiff submitted a formal request for an accommodation. *See* ECF 39-1 at 7. Plaintiff's request asked for "[i]mmediate assignment of a permanent parking space in the lobby garage of [U]ptown [T]owers or the basement garage on West Burnside." *Id.*

The "basement garage on West Burnside" (Burnside Garage) is a parking garage that Uptown Tower owns and operates as a commercial enterprise separate from its operation of the apartment complex in which Plaintiff resides. ECF 44, ¶ 4. The entrance to the Burnside garage is located on West Burnside Street and contains parking spaces for cars. *Id.* ¶¶ 5-6. Uptown Tower offers those car parking spaces to the public at a rate of $175 per month. *Id.* ¶ 4. To access Uptown Tower from the Burnside garage, an individual would have to leave the Burnside garage entrance on West Burnside Street and enter the building from the street. *Id.* ¶ 5. Plaintiff has observed empty spaces in the Burnside garage throughout Plaintiff's tenancy, it has advertised available parking throughout her tenancy, other Uptown Tower tenants park in the Burnside garage, and Plaintiff has observed Uptown Tower employees using the Burnside garage. ECF 39-1, ¶¶ 3, 5, 6, 11.

In April 2021, Defendants denied Plaintiff's request for accommodation because all parking spaces in the residential garage were assigned to other tenants. ECF 24, ¶ 6; ECF 39-1, ¶ 7. Ms. Simonson, the property manager of Uptown Tower, informed Plaintiff that she was third

on the waiting list and that Uptown Tower would provide her with a parking space as soon as one became available. ECF 24, ¶ 6; ECF 39-1, ¶ 7.

On July 5, 2021, Guardian offered Hume a parking space "until [a spot] that better meets [Hume's] needs becomes available." ECF 24-1. Hume accepted that offer with the understanding that it was temporary. ECF 39-1, ¶ 11; ECF 39-1 at 14. At some point, Guardian provided Hume a proposed parking agreement relating to that parking spot, dated July 9, 2021. ECF 25-3. On July 13, 2021, Hume's counsel responded to Guardian's proposal, requesting as a reasonable accommodation that Guardian strike the provisions of the proposed parking agreement that would require Hume to move her car every three days and prohibit back-in parking. ECF 25-2 at 1. Hume's counsel attached to his email the July 9th proposed parking agreement with the relevant provisions crossed out. ECF 25-3. Hume's counsel stated, however, that he was "able to confirm with Ms. Hume that the parking space offered does meet her needs for a reasonable accommodation." ECF 25-2 at 1.

In a declaration submitted in support of its summary judgment motion, Guardian attests that it "approved" Hume's requested changes and "sent" Hume a revised parking agreement with her changes, although Hume never executed the revised agreement. ECF 24, ¶ 12. The declaration does not state when Guardian approved the changes or when it purportedly sent Hume the revised parking agreement. Notably, the declaration attaches, as the purported revised parking agreement that Guardian purportedly sent to Hume, the marked-up July 9, 2021 parking agreement that Hume's counsel sent to Guardian on July 13, 2021. ECF 24-3. Guardian does not provide any letter or email by which Guardian sent the revised agreement to Hume or conveyed its approval of Hume's proposal to Hume. Guardian also attests that Hume has been allowed to park in the spot despite not signing the revised parking agreement. ECF 24, ¶ 10. Hume,

however, does not contest that Guardian approved Hume's requested changes to the parking agreement or that Hume continues to park in the assigned spot under the revised conditions.

On July 29, 2021, Hume requested either a wheelchair accessible parking space or an additional parking space adjacent to her newly-assigned space number five in the parking garage with painted lines, to make the spot more wheelchair accessible, and signage that the spots were assigned to Hume. ECF 24-2. Parking space number five is not an accessible space as defined by Oregon law.[1] Guardian did not grant that request because the second spot requested by Hume is already assigned to another tenant. ECF 24, ¶ 11. That adjacent space remains assigned to another tenant. *Id.* The accessible parking space in the residential garage is currently assigned to another disabled tenant. *Id.* ¶ 5.

## DISCUSSION

The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of service or facilities in connection with such dwelling because of a handicap." 42 U.S.C. § 3604(f)(2) (as amended by Pub. L. No 100-430, 102 Stat. 1619 (1988)). Under the FHA, discrimination includes "a refusal to make reasonable accommodations in rules policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to enjoy the dwelling." *Id.* § 3604(f)(3)(B).

To establish a *prima facie* case of a refusal to make a reasonable accommodation, a plaintiff must show that: (1) he or she suffers from a "handicap" as defined by 42 U.S.C. § 3602(h); (2) the defendants knew or should reasonably be expected to know of the plaintiff's

---

[1] *See* Oregon Revised Statutes § 447.233(c) ("Accessible parking spaces shall be at least nine feet wide and shall have an adjacent access aisle that is at least six feet wide.").

handicap; (3) the accommodation of the handicap "may be necessary" to afford the plaintiff an equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable; and (5) the defendants refused to make such accommodation. *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006).

Plaintiff bears the burden of showing that a requested accommodation "seems reasonable on its face." *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1156 (9th Cir. 2003). If Plaintiff meets this initial burden, Defendants may rebut the presumption of reasonableness and necessity by showing that "the accommodation would cause undue hardship in the particular circumstances." *Kuhn v. McNary Estates Homeowners Ass'n, Inc.*, 228 F. Supp. 3d 1142, 1147 (D. Or. 2017). Defendants are only obligated to provide an accommodation if it is both necessary and reasonable. *Giebeler*, 343 F.3d at 1148. "[A]n accommodation is reasonable under the FHAA when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens." *Id.* at 1157 (quotation marks omitted).

Defendants move for summary judgment on the basis that they have already granted Plaintiff's reasonable requests, that Plaintiff has represented that those accommodations meet her needs, and that Plaintiff's additional requests are not reasonable. Plaintiff responds that Defendants violated the FHA by granting Plaintiff a parking spot after an unreasonable delay and that Defendants continue to violate the FHA by failing to provide Plaintiff with an *accessible* parking space in either Uptown Tower's residential garage or the Burnside garage, and by failing to implement signage at parking space number five in the residential garage.[2] Plaintiff withdraws

---

[2] Plaintiff does not argue that despite Defendants post-lawsuit voluntary conduct of allowing her to park in a dedicated spot, she nonetheless is entitled to prospective injunctive relief because her claims were not moot based on Defendants' offered accommodation. Defendants' accommodation appears to be informal—there does not appear to be anything stopping Defendants from withdrawing their unwritten, informal agreement allowing Plaintiff to

her request for an additional parking space adjacent to parking space number five. *See* ECF 39, at 5. Thus, the issues for the Court to decide are whether Defendants granted Plaintiff's request for an assigned parking spot after an unreasonable delay, whether Plaintiff's request for either an accessible parking space or signage at parking space number five is reasonable on its face and if so, whether there is any genuine issue that the accommodation would cause Defendants undue hardship.

As for Plaintiff's argument related to unreasonable delay, although the Ninth Circuit has not spoken on this issue, district courts in this circuit have held that a plaintiff may show that the defendant constructively denied a request for accommodation by causing an unreasonable delay or bad faith delay in granting the request. *See, e.g.*, *Budwig v. Allegiant Air, LLC*, 2020 WL 5235671, at *12 (E.D. Cal. Sept. 2, 2020) ("However, an employer's unreasonable delay in providing reasonable accommodation to a disabled employee may constitute a failure to provide such accommodation. The acceptable timetable for an employer's providing a requested

---

park in spot number five. Normally, such informal voluntary conduct does not serve to moot a claim or preclude future injunctive relief. *See, e.g.*, *Buono v. Norton*, 371 F.3d 543, 545-46 (9th Cir. 2004) (stating that for a defendant's voluntary conduct to moot a claim, the defendant must prove that "(1) subsequent events have made it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." (cleaned up)). The party asserting mootness by voluntary cessation bears a "formidable" and "heavy" burden. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000); *Porter v. Bowen*, 496 F.3d 1009, 1017 (9th Cir. 2007). This is true even in Fair Housing Act cases. *See, e.g.*, *Yellowstone Womens First Step House, Inc. v. City of Costa Mesa*, 2018 WL 6164307, at *4 (C.D. Cal. July 13, 2018). Because Plaintiff did not challenge Defendants' argument on this ground, however, the Court does not reach this issue.

Nonetheless, the Court relies in deciding this motion on Defendants' contentions that they have accommodated Plaintiff by allowing her to park in an assigned spot with the additional accommodations she requested. If that fact were to change in the future, the basis of this Opinion and Order would be dramatically affected. In other words, Defendants are obtaining a benefit in this litigation from that representation and a change in that material fact may have implications in any future assertion of issue preclusion or claim preclusion.

PAGE 7 – AMENDED OPINION AND ORDER

accommodation varies depending on the nature of the request and the circumstances of each case." (quoting 2 Ams. with Disabs.: Pract. & Compliance Manual § 7:166)); *LaRosa v. River Quarry Apartments, LLC*, 2019 WL 3538951, at *8 (D. Idaho Aug. 3, 2019) ("A defendant constructively denies an accommodation request when an unjustified and indeterminate delay has the same effect of undermining the FHA's anti-discriminatory purpose as a formal denial.); *Elliott v. QF Circa 37, LLC*, 2018 WL 2933467, at *10 (S.D. Cal. June 12, 2018) ("The determination of whether a request was constructively denied is fact-specific, and made on a case-by-case basis.. An undue delay or unreasonable delay in granting a request may amount to a constructive denial." (gathering cases)); *Mathis v. Oregon Health & Sci. Univ.*, 2006 WL 8459252, at *2 (D. Or. Jan. 4, 2006) ("[L]ogically it does seem that an employer could be so ineffective in implementing an accommodation as to constitute an adverse employment action."); *Anderson v. Ross Stores, Inc.*, 2000 WL 1585269, at *8 (N.D. Cal. Oct. 10, 2000) (gathering cases in which it was found that the "employer has effectively denied her request for a reasonable accommodation by excessively delaying the consideration or implementation of the modification"). Additionally, other circuit courts have accepted this theory. *See, e.g.*, *Bhogaita v. Altamonte Heights Condominium Ass'n, Inc.*, 756 F.3d 1277, 1281-83 (11th Cir. 2014); *Groome Resources, Ltd. v. Parish of Jefferson*, 234 F.3d 192, 199-200 (5th Cir. 2000).

Plaintiff raises a very specific argument relating to unreasonable delay. Plaintiff contends that her request for a reasonable parking accommodation was unreasonably delayed because Defendants had available to them the Burnside garage. Plaintiff does not raise any other argument relating to unreasonable delay. The Court finds that, viewing the facts in the light most favorable to Plaintiff, Defendants knew or should have known about Plaintiff's need for a reasonable accommodation based on her obvious disability from using a wheelchair and having

an Oregon disabled parking permit and her repeated requests for a parking accommodation, both

oral and in writing, beginning in 2014. The Court, however, must evaluate whether Defendants

*unreasonably* delayed by failing to provide Plaintiff an assigned spot in the *Burnside* garage.

Plaintiff states that the Burnside garage has always had available spaces throughout her

tenancy and has always been advertised as having available parking. This includes the

handicapped spot, which Plaintiff contends was vacant until April 2021. Plaintiff also states that

two residents of Uptown Tower have been allowed to park in the Burnside garage and that

employees of Uptown Tower park in the Burnside garage intermittently. Defendants dispute this,

asserting that there "*are* no car parking spaces available *at the present time*" in the Burnside

garage. Defendants, however, make no assertion regarding the availability of parking spots from

2014-2021. Viewing the facts in the light most favorable to Plaintiff, she raises a genuine dispute

sufficient to defeat summary judgment as to whether Defendants have made parking spaces

available at the Burnside garage for residents and employees of Uptown Tower, whether any

spaces were available between 2014 and 2021, the period of Defendants' delayed response, and

whether it was unreasonable to refuse to provide Plaintiff with a spot in the garage during that

time.

Plaintiff's next argument is that Defendants continue to violate the FHA because they

have not granted Plaintiff an accessible parking spot. Plaintiff contends that she accepted her

assigned spot as a temporary accommodation and that she requires a wheelchair accessible spot.

The Court acknowledges that Plaintiff uses a wheelchair sometimes and that she has a disabled

parking permit from the state of Oregon. Plaintiff, however, informed Defendants that the

assignment of parking spot number five, with the two additional accommodations, was an

acceptable reasonable accommodation. Further, Plaintiff's first request for accommodation only

asked for a permanent parking space, not an accessible one, and Defendants eventually granted that request by providing Plaintiff with parking space number five. After stating that Plaintiff's exclusive parking space satisfied her needs with two additional accommodations that Defendants granted, Plaintiff submitted a second request for accommodation asking for an accessible parking space. In Plaintiff's second request, Plaintiff left blank the section that asked Plaintiff to explain why the accommodation is necessary for the full enjoyment of her dwelling. Nevertheless, drawing all inferences in Plaintiff's favor, the Court will assume that Plaintiff's request for an accessible parking space is reasonable on its face.

The Court agrees with Defendants, however, that under the circumstances of this case, the undisputed facts show that allotting Plaintiff an accessible parking space would impose an undue hardship on Defendants. There currently are no accessible parking spaces available in either Uptown Tower's residential garage or the Burnside garage.[3] Thus, granting Plaintiff's request would require Defendants to remove other disabled individuals from their assigned accessible parking spaces in favor of Plaintiff. The FHA does not require such a result. *See Desch v. Wheatley*, 2010 WL 11506404, at *8-9 (W.D. Tex. Jan. 19, 2010) (concluding that after the defendant had granted the plaintiff's request for a parking space near his apartment, plaintiff's additional request for two specific parking spaces was not reasonable because other tenants were already assigned to those parking spaces).

Additionally, even though Plaintiff has withdrawn her request for the parking space adjacent to space number five, the undisputed facts also show that requiring Defendants to convert that spot is not reasonable. That spot currently is assigned to another resident. Further,

---

[3] This does not answer, however, whether the accessible spot in the Burnside garage was available before April 2021, as Plaintiff contends. That is an issue relating to Plaintiff's claim of unreasonable delay.

even if that resident were to leave, there is a waitlist for available spots in the Uptown Towers parking garage. Thus, under the circumstances of this case, requiring Defendants to convert space number five into a new accessible parking space would cause Defendants to remove the individual currently assigned to the converted parking space. And at least in the residential garage, that other individual (or future individuals on the waitlist who could take that parking spot) very well may be disabled with mobility limitations, given the focus of the Uptown Towers on seniors and persons with disabilities.

As for Plaintiff's request for signage at parking space five, Plaintiff has offered no explanation or evidence to show why a sign stating "for Michelle Hume" is necessary for her equal use and enjoyment of her apartment. In her July 29th request for accommodation, Plaintiff left blank the section that asked Plaintiff to "explain why the accommodation/modification . . . is necessary for [Plaintiff] to fully enjoy [her] dwelling." Plaintiff's brief relies on *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328 (2d Cir. 1995), but does not explain why Plaintiff requires a sign at her assigned exclusive parking space. Plaintiff points to the Second Circuit's discussion of 24 C.F.R. § 100.204(b), which provides that a landlord with more parking spaces than tenants would likely be required to make available a parking space near a disabled tenant's apartment. *See id.* at 335. Plaintiff does not explain how *Shapiro* or 24 C.F.R. § 100.204(b) supports her request for signage. Defendants have assigned parking space number five exclusively to Plaintiff, and Plaintiff previously represented that this parking space meets her needs for accommodation. Plaintiff has introduced no evidence showing why a sign at parking space five stating "for Michelle Hume" is necessary for her equal use and enjoyment of her dwelling. For example, she does not contend that other residents or visitors are parking in space number five absent signage

PAGE 11 – AMENDED OPINION AND ORDER

indicating the spot is for her exclusive use. Thus, Plaintiff has not met her burden to show that her request for signage is reasonable on its face.

## CONCLUSION

The Court GRANTS IN PART Defendants' motion for summary judgment (ECF 23). Defendants' motion is granted with respect to all claims except Plaintiff's claim for damages under the Fair Housing Act that Defendants unreasonably delayed and therefore constructively denied Plaintiff's requests for a reasonable parking accommodation from 2014 until Defendants granted the request in July 2021.

**IT IS SO ORDERED**.

DATED this 21st day of December 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge